## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

      **v.**                                      **Case No. 10-CR-98**

**KENNETH JOHNSON**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Kenneth Johnson pleaded guilty to possession of a firearm as a felon, 18 U.S.C. § 922(g)(1), and I set the case for sentencing. In imposing sentence, I first calculated defendant's advisory sentencing guideline range, then selected the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010).

### I. GUIDELINES

Defendant's pre-sentence report ("PSR") set a base offense level of 20, based on his previous drug trafficking conviction, U.S.S.G. § 2K2.1(a)(4)(A), added 2 levels because the firearm was stolen, § 2K2.1(b)(4)(A), and then subtracted 3 levels for acceptance of responsibility, § 3E1.1, for a final offense level of 19. Coupled with defendant's criminal history category of II, level 25 produced an imprisonment range of 33-41 months. Neither side objected to these calculations, which I found correct and adopted accordingly.

### II. SECTION 3553(a)

**A.    Sentencing Factors**

Section 3553(a) requires the court, in determining the particular sentence to be imposed,

to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the [advisory] sentencing [guideline] range[;]
>
> (5) any pertinent policy statement . . . issued by the Sentencing Commission[;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public, and rehabilitation of the defendant. 18 U.S.C. § 3553(a). In making this determination, the district court may not presume that a guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009), or place any thumb on the scale favoring a guideline term, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). The court is also free to reject any guideline on policy grounds, see, e.g., United States v. Pape, 601 F.3d 743, 749 (7th Cir. 2010); United States v. Corner, 598 F.3d 411, 414-15 (7th Cir. 2010) (en banc), particularly where the Sentencing Commission did not, in adopting the particular guideline, fulfil its "characteristic institutional role" of acting based on

study, expertise, empirical data, or national experience, see Kimbrough v. United States, 552 U.S. 85, 109 (2007). Ultimately, the district court must make an independent determination as to the appropriate sentence, taking into account the types of sentences available, the relevant § 3553(a) factors, and the arguments of the parties. See Gall v. United States, 552 U.S. 38, 49-50 (2007). The court must then explain the chosen sentence in order to promote the perception of fair sentencing. Id. at 50.

## B.     Analysis

### 1.     The Offense

On April 20, 2010, police investigating a shots fired complaint spoke to a witness, who indicated that he heard a shot and saw a man walk in one direction and a woman in the other. Police located the woman, defendant's girlfriend, and recovered a bullet fragment from the sidewalk. They then stopped defendant, who stated that he just had a fight with his girlfriend and admitted that he had a firearm in his pocket. Officers recovered a loaded .22 from his right pocket and a box of ammunition from his left pocket. Defendant told the officers that the gun belonged to his girlfriend, but as a convicted felon he could not lawfully possess it regardless of ownership.

In his statement to the PSR writer, defendant explained that following the argument with his girlfriend he left their residence, with her gun, to remove himself from the situation. She followed, so he fired the gun into the air to get her to leave him alone. He then continued on his way, and she returned to the residence. He denied firing the gun at her. Defendant's girlfriend essentially confirmed his version, stating that she did not want him to leave and followed him; she blamed herself for the situation escalating.

3

**2. The Defendant**

Defendant was twenty-nine years old, with a limited prior record consisting of a municipal obstructing/resisting violation in 2002, a state resisting conviction in January 2005, and a marijuana distribution case in October 2005. His girlfriend, the mother of his two youngest children, remained supportive, despite the circumstances of this case, stating that it was not in his character to react that way or to be violent. His ex-girlfriend, the mother of his two older kids, also made positive statements, indicating that he was a good father. Unlike many defendants who come before me, he was largely up to date on child support.

It appeared that the death of defendant's mother in 2003 had a significant impact on him, and that he thereafter started drinking too much and escalating his use of marijuana. I found a mental health assessment and treatment warranted to help him deal with the loss of his mother and perhaps better control his emotions. Defendant dropped out of school but commenced efforts to obtain a GED while detained in this case, with his instructor stating that he demonstrated a fervent desire to excel academically and had been a self-motivated learner. Despite his lack of education, he compiled a pretty good work record, mostly through temporary services, as discussed in ¶¶ 58-63 of the PSR.

**3. The Sentence**

The guidelines called for a term of 33-41 months, and while I agreed that a period of confinement was needed here, particularly given defendant's discharge of the weapon, I found that a sentence below the range would suffice. In making this determination, I noted two flaws in the guidelines as they applied in this case.

First, defendant's base level increased from 14 to 20, and the range from 15-21 to 33-41

months, based on a minor drug distribution case in which defendant sold $5 worth of marijuana to an undercover officer, apparently in an attempt to make some money to buy diapers for his baby. The record contained no suggestion of firearm possession in that case or any other circumstances suggesting that he posed a greater risk with a gun than any other felon. The state court sentenced him to 4 months in jail in that case.

As I discussed in United States v. Fogle, 694 F. Supp. 2d 1014, 1017-18 (E.D. Wis. 2010), the Sentencing Commission, without adequate explanation, decided to treat prior drug distribution cases, even those involving no violence or weapons, the same as crimes of violence in U.S.S.G. § 2K2.1(a). The Commission may have based its decision on the fact that Congress, in passing the Armed Career Criminal Act, determined that greater sentences were called for when the defendant had prior convictions for certain crimes, including drug distribution, but guidelines that simply reflect congressional enactments do not represent an exercise of the Commission's proper institutional role and are accordingly entitled to less respect. See Kimbrough, 552 U.S. at 96-97. Where, as here, the offense level is increased from 14 to 20 based on a minor, prior drug case, § 2K2.1(a) may overstate the risk that the defendant-felon poses with a gun. Fogle, 694 F. Supp. 2d at 1018 (citing United States v. Bullock, No. 08-CR-194, 2009 WL 3667094, at *3 (E.D. Wis. Nov. 2, 2009); United States v. Love, No. 07-CR-198, 2008 WL 2074056, at *3 (E.D. Wis. May 14, 2008)). Indeed, the Sentencing Commission has acknowledged, in the context of the career offender guideline, which employs the same definitions as U.S.S.G. § 2K2.1(a), that treating minor drug cases the same as crimes of violence may result in an overstatement of the defendant's criminal risk. See U.S. Sentencing Commission, Fifteen Years of Guideline Sentencing 133-34 (Nov. 2004). I found that level 20 overstated defendant's risk with a gun in this case.

5

Second, defendant received a 2 level enhancement for possession of a stolen firearm, even though the record contained no evidence that he stole the gun or knew it had been stolen. The record instead showed that his girlfriend acquired the weapon, prior to meeting defendant, to protect her home from break-ins. The Commission dispensed with a mens rea requirement for this enhancement, see U.S.S.G. § 2K2.1 cmt. n.8(B), but it has never satisfactorily explained why the increase should apply on a strict liability basis. Courts have nevertheless sustained this guideline against constitutional and other challenges, and I did not find it invalid in this case. However, in exercising discretion under § 3553(a), I may distinguish between a defendant who unwittingly possessed a stolen weapon and a defendant acted with full knowledge of the weapon's characteristics. See United States v. Jordan, No. 09-CR-141, 2010 WL 3730077, at *3 (E.D. Wis. Sept. 17, 2010).

Eliminating the stolen gun enhancement, and treating defendant like any other felon, produced a range of 12-18 months. Given his otherwise positive background, including his solid work record and family ties, a sentence at the low end of that range, as defendant requested, would have been sufficient. However, I had to acknowledge the aggravating fact that defendant discharged the firearm in this case; this was not simply passive possession in the home. Even if, as I accepted, defendant was not trying to hurt anyone, including his girlfriend, he potentially placed others at risk by shooting into the air.

Under all the circumstances, I found a sentence of 15 months sufficient but not greater than necessary to satisfy the purposes of sentencing. This sentence provided just punishment for defendant's conduct, including the aggravating fact of firing the gun, and deterred defendant from re-offending, as it was far longer than any previous sentence he served. Given the positive factors discussed, I did not see a need for more to protect the public.

6

## III.  CONCLUSION

For these reasons and those stated on the record, I committed defendant to the custody of the Bureau of Prisons for 15 months, followed by 3 years of supervised release with substance abuse and mental health treatment conditions.  Other terms of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 12th day of November, 2010.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge